Good morning, Your Honors. Doug Keller on behalf of Mr. Martinez. The district court reversibly erred in this case when it denied Mr. Martinez's motion to dismiss, and reversibly erred again when it responded to a jury note without first consulting with defense counsel. I'd like to try to discuss both those issues, and I'll begin with the motion to dismiss. At this point, whether the district court properly denied Mr. Martinez's motion to dismiss, to me, is a matter for the jury to decide. It turns entirely on whether Mr. Martinez could have established a plausible cat claim back in 2012, assuming his evidence is true. And he can do that. The first, he could plausibly establish that he would have been tortured if he were sent back to Guatemala. He introduced a substantial amount of evidence that he used to be a member of the 18th Street Gang, a large, violent, vindictive gang that controls large swaths of Guatemala. He also introduced evidence that he was threatened before he left Guatemala by that gang with death. But he had, what, five years of basically peaceful residence? He didn't. There's a dispute, I think, between the government and myself about when he was threatened. It's our position he was threatened shortly before he left in 2005. So he left the United States and then was gone for seven years, and then would have been deported back in 2013. So there was no time in which he'd lived peacefully in Guatemala after he'd been threatened with death from the 18th Street Gang. So it's certainly our position that given the reputation of the 18th Street Gang and the evidence we have in the record concerning how violent they are, that it's plausible they would have tortured him if he were to return. Doesn't it require some acquiescence by the government? It does. And I think the key for us on acquiescence is that the rampant corruption in the police force in Guatemala. And so in district court we pointed to, I think, three sort of boxes of evidence to establish corruption. First, we pointed to the State Department report, which said, and I quote, there's widespread institutional corruption, particularly in the police and judicial sectors, police and military involvement in serious crimes such as kidnapping, drug trafficking, and extortion. And it goes on to note that even immigration officials for Guatemala took part in some of this violence. We also pointed to the Brands report, the military defense analyst who sort of echoed those same things. And we provided evidence from one of Mr. Martinez's neighbors who said that, quote, police in Guatemala are very corrupt. Gangs have infiltrated the police force. The gang will find out where you live if you file a police report against them. Counsel, have we ever held that potential persecution by a gang can be considered as a basis for asylum or CAT? Not for asylum, but for CAT. This court has never held that. But most of the cases this court gets are on review from the BIA. And so all it's trying to determine is whether there's substantial evidence in the record to support the BIA's conclusion on acquiescence. So what this court has said in cases like Garcia Milan is that if there's corruption, that can count as acquiescence. And so here I think we do have the evidence to establish that there's corruption, and so therefore we have the evidence that there's acquiescence. Did you actually attach the reports from which these comments were made about the goings on in Guatemala? We didn't attach the physical reports. What we did is we cited to them and provided the URL to the court so it would have access to the reports. I think, frankly, just to say paper, we didn't include an actual physical copy of the reports. But they're certainly in the record and the court had access to them and could have read them if he wanted to. So if the court has no further questions on CAT, I can discuss the jury note issue. Briefly, the parties agree that not informing defense counsel of the note before responding to the note was error. It violated the Constitution and it violated Rule 43 of the Federal Criminal Procedure. The more difficult question is whether it's harmless error review applies or whether it's structural error. And whether structural error turns on the nature of the note. Here, this note was a question about an apprendi element, about the date of removal. That's the sort of important question that would count as structural error. It makes it very similar to what happened in Musladeen when the jury asked about an element of, I believe, California murder. This is the same type of note. And so in Musladeen, this court said if it reviewed the issue de novo, it would reverse. Well, here this court is reviewing this issue de novo and so it should reverse. What answer could have been given that would have been different from what the judge said? Well, I think the court could have certainly explained more clearly the fact that it was for the jury to decide whether the date of removal was as alleged. And they need to decide that using the beyond reasonable doubt standard. What the court ended up doing is providing a very confusing response where it, in two sentences, it both told the jury it was to consider the date and that it wasn't to consider the date. I don't know how the jury could have possibly interpreted that, but I think this is the very reason why we want defense counsel there in formulating a response to the note. So we make sure the jury doesn't get a confusing response to their question. I think what happened here is the district court took this question as just, well, once we make the finding, do we do something with that? But that's not the only interpretation of the question. I certainly took the question when a jury is asking, quote, what the significance of this finding to be. What's the purpose of this? What standard do we apply? Is it the same significance as an element of the offense? And I think if we would have been there to discuss the issue with the judge, we could have brought that to his attention. But I think more importantly, even if we would have agreed with what the judge said in response, the important point was that because this was a question about an element, we didn't discuss the note, and because we weren't called in, it's structural error. His answer, I don't think his answer was that. He said, his answer was, I wrote, it is a matter for the court to consider, not the jury. The jury has to consider whether the defendant was deported or removed after that day. So what do you think he meant by it's a matter for the court to consider, not the jury? I think what he was trying to say is that once you check off the box, then I'm going to do something with that finding. That's not for you to do something with. But I think the way it came out, it just came out very confusing and a bit inarticulate. Who is the judge? Judge Benitez. So I think, again, this is why you want to bring in defense counsel to have a discussion about how to respond to these notes, especially when it is a question about something as important as an apprendee element. If the court has no further questions. Thank you, Judge. Good morning, Your Honors. May it please the Court. Mark Rahe for the United States. On the first issue on appeal, the district court did not reversibly err in denying the motion to dismiss. As the prosecutor argued below during the hearing on the motion, even if you assumed every single thing that the defendant said was true, it still didn't give rise to a plausible claim for cat deferral. And it's important to keep in mind that whereas plausibility may not be the hardest standard in the world, this Court's precedents have made clear that it's more than just possible. And specifically with regard to cat relief, there are two prongs to cat relief. You have to show that it is more likely than not that you would be tortured upon the return to your country of origin and that the government would acquiesce. But that first prong has a more likely than not, which is more than 50 percent. When you look at the evidence in this case, and most significantly, Excerpts of Record 26-27, this defendant only submitted a two-page, what I would say bare-bones, ten-short sentence affidavit in support of his claim. You can read that at Excerpts of Record 26-27 multiple times. You'll never see anything in there about this defendant ever being threatened by the 18th Street Gang before he left Guatemala. Instead, all it contains is a conclusive assertion that he felt he would be in danger if he returned. But there's zero evidence about any past torture. And the record is clear then, and I believe I cited authorities, in looking at the plausibility of cat relief, one of the most important factors is evidence of past persecution. Here, there's no question that that gang never laid fingers on this defendant. And what my opponent referred to ---- How long was he in Guatemala? What was that, Your Honor? How long was he in Guatemala? He was in Guatemala from 1992 to 2005, so 23 years. He left when he was 25. The only evidence of the past threat that my defendant relies on is found in Excerpt of Record 29, and this is from his aunt, Olga Martinez. And I would preface this by saying, as my opponent even concedes, the way he puts it in his reply brief is that there's a dispute between the parties about the clarity of the record. Keep in mind that on prejudice, the law of this circuit has been clear for decades, going back to Pro Etovar in 1994, the defendant unequivocally has the burden of proving prejudice. So if there's any ambiguity in the record, it rests at that table, not at ours. But be that as it may, when you look at that Excerpt of Record 29, again, this is the statement of his aunt, it says when he was around 17 or 18 years old, some gang members started trying to force him to join their gang. And this is the second paragraph on that page. And this is where, allegedly, the gang made a threat. You either have to kill somebody in your family, or we will kill you or your family. That paragraph says when he was 17 or 18. That would have been in 1999 or 2000. And even, I believe, at Excerpt of Record 4, in the defendant's own moving papers, he admits he joined the gang when he was a teen. If you were to take this statement at face value, that this was sort of his threshold test for entering the gang, to prove your loyalty to us, you have to kill somebody from your own family, this would have happened, this threat, in 1999 or 2000. But instead, not only does he not fulfill it, his own family members aren't harmed, he leaves in 2005. Another factor that goes to the plausibility of cat relief is whether there was evidence the defendant could relocate. In 2005, when the defendant left Guatemala, his aunt and his grandmother, with whom he had been living, moved to another part of the country. And then, according to record, there was no violence against them for the next seven years. I believe his maternal grandmother passed to natural causes in 2011. But when he returned in 2012, he lived with that aunt. And it wasn't for another year that he allegedly got attacked. And the final point I'd make about that, in the case of United States v. Reyes Bonilla, and I believe Judge Wardlaw sat on that case, this court specifically held that any evidence of post-removal violence cannot be considered for purposes of an attack on an underlying departure or deportation. We have to put ourselves in the shoes of the immigration officials at the time of the event. So here in 2012 is when this administrative removal occurred. The only evidence of actual violence, and this is what almost all of his witness statements went to, considered something that happened in the fall of 2013. So by definition, as unfortunate as that event is, it doesn't go to the issue. And, again, he has the burden of proving the plausibility of relief. Could you have used half the time? I could leave enough for the second issue. I'll turn to that now, Your Honor, the jury note. My opponent is correct that it was error for the court not to consult with opposing counsel, but we would contend that that error is harmless. And I know that in my briefing I argued plain error. I'll even withdraw that because if you look, all the cases that I rely on are harmless error cases. And my understanding of plain error review is that under the third prong, it's basically the same thing as harmless error. It's just who has the burden of proof. But the government would gladly embrace that burden here. This issue about the significance of the date, as I believe the parties in agreement, there is only one significance of this date. That was the date that the defendant incurred his child molestation conviction. If you prove a removal subsequent to that date, it becomes a matter for sentencing. It increases the maximum from 2 years to 20 years because that's an uncontested aggravated felony. So when the jury's note is what is the significance of that date, the government would submit the most reasonable reading of the record is the only significance is punishment. And it's interesting. I mean, that's basically what the district court said. The question is what is the significance. The direct response is. The question really is first, is this a structural error or is it not? Is harmless error applicable? Correct. And we are arguing that it's not structural error because we don't believe this is, that this happened during critical stage. And when. You don't agree that a, that while a jury is deliberating, if they have a question, that's at a critical stage? Not that it would make it structural. And I rely on this Court's cases that have held as much. I mean, if that were the truth. What do you say about Misladen? About Misladen, I say this. There, the question was undoubtedly about substantive law. It was very detailed. It was a murder case. And the jury said, we noticed that the instruction said this form of murder includes express malice. We're wondering, does that include implied malice? That doesn't tell you about whether that is a critical stage or not. Well, I think the point of that, Your Honor, and I believe my opponent makes reference, is that is a question without doubt about the substantive law that they're holding the defendant. That goes to guilt or innocence, and that's a question of, you know, substantive law. But the question is the stage of the proceedings, not whether the particular question is about substantive law. Is the question asked by a jury, while it's deliberating, is that a critical stage of the proceedings? Well, I know what Your Honor is getting. Obviously, deliberations are important. I'm arguing within the context of the case. I'm not talking about important as a matter. I'm saying constitutionally, when we describe what stages are critical, is that a critical stage of the proceedings? My answer is that it turns on the totality of circumstances. The critical stage inquiry is, to what extent could an attorney help? To what extent would the defendant's presence help? That's why, when you have questions about, are we going to get to that? We're talking about harmless error, really. Well, exactly. You know, whether the question really is important or not. That's whether it's harmless. That only comes after you determine whether it's a critical stage. If it's a critical stage, you don't get to harmless error. Well, Your Honor, I mean, the way I read the law, Bennigan, Nairganan, your case from 1986, Frazen, this Court, chronic was decided by the Supreme Court in 1984. So that gives us 25 years where this Court has never held that a note during deliberations by definition just automatically becomes at a critical stage. Let me ask you a question, counsel. Have you ever known, do you have lots of experience with district court judges not calling in counsel when the jury asks a question while it's deliberating? I mean, my experience, the first thing you do is you call counsel and you never answer that question without consulting counsel. Right. I don't have much experience. I don't know of many cases where that's happened, Your Honor. But don't you think that's because most judges recognize that it's a critical stage when the jury is deliberating and they have a note? And this, I mean, particularly, I don't find his answer, that's going to the plein air part, but I don't find his answer particularly helpful because he said that's a matter for the court. And how does the jury understand that that's a matter for the court? I mean, they don't understand how Section 1326A and B work. I mean, if I were counsel for Martinez, I would say, no, you can't give them that answer. That's too confusing. You know, go back to the jury instruction or I don't know if there was, was there a special verdict form on this? There was. And so they had to check. They actually had to say what was moved after the state. I mean, I would respond as follows, Your Honor. A lot of these jury questions, I mean, it's from the cases that I've seen, the overall majority say just refer to your instructions. I would say, well, how helpful is that? The jury has a question. No, I agree, but they also call in counsel, too, even if the answer is as simple and unthinking as, well, just look at your instructions. But they, I mean, I've never, well, I mean, I just think it's very unusual that counsel wasn't called in on this question. And I'm just wondering, is that because people assume that jury deliberations are a critical stage and if the jury has a question that could make the case go one way or the other, that it probably is a critical stage? I mean, that's dicta and muslet in any way. And not only muslet. That's another question. We have had a dispute on the court as to what dicta is. There is one view advocated principally by Judge Kaczynski that any reasoning leading up to a decision is not dicta, even though it was not necessary to do it. There's another view led by Judge Tashima, which was unless it was necessary to the decision, it's dicta. I think we settled that in an unbanked decision in favor of Judge Kaczynski's view, but I don't remember the name. We did. I don't remember the case either, but we did. Anyway, we're going way over time and also way beyond the issue. But thanks very much. Absolutely. Thank you. Just a couple of brief points. I think the case you're referring to is United States v. Johnson, where this court adopted Judge Kaczynski's view of dicta that unless the court is ‑‑ I'm sorry, generally speaking, the court is going to follow what it previously said more or less, that it's not going to quickly dismiss something as dicta. And I think musletine clearly falls under that rule. This court thought about it. It wrote a lengthy, thoughtful opinion on the subject. I would also note that this court echoed musletine in a subsequent en banc case called the United States ‑‑ I'm sorry, Franks v. someone, I can't remember the last name, in 2008. So to the extent it was dicta and musletine, it was repeated in that en banc case, and then it was repeated again in Mosin. Is the en banc case that you're referring to cited in your brief? It's not. It's cited, too, in Mosin. I can give Your Honor the cite. It's a 533 F3rd 724. It's 2008 decision. What's the name of the case? Franks v. Hazy. It's also an en banc case. Briefly about the Catt claim, it's true, Mr. Martin, his declaration doesn't talk about pre‑2012 conduct, but that's typically because we want our clients to say as little as possible in declaration, because obviously judges generally take a very skeptical view of what they say as demonstrated in this case. And so what we did is we had objective third parties talk about what happened. And so we had not one, not two, but three witnesses talk about the threat that took place before 2012. That's in ER 35, ER 39, and ER 29. Is it your position, getting back to the structural error issue, is it your position that it doesn't matter how bland or unimportant the question is, but it's a structural error if the question is answered without the attorneys being present? I think that's certainly the best view of the law. And why I say that is that this court has only addressed this issue in three cases. It addressed it in the EDPA case, Musladeen. It addressed it, and that's when the court said that it would have found structural error. It addressed it in the en banc case, Franks. And the court, again, basically said more or less all notes are structural error. And then this case in 2009 comes out, Mosin, which essentially recites every case this court has previously decided on jury notes and lends them to their facts. And so what I'm trying to do is say even if you limit that rule to this very bizarre way Mosin did, I still think I win because it falls under the rule that court set out. I've got to say, you know, I was astonished reading Mosin because it sounded very much like a memorandum of disposition. It didn't give the facts. It just took issue by issue and said a few things about them. Nevertheless, it was published and is an opinion, although it's a very, I would say, summary opinion without discussion of the facts. But I think you're right, those are the principal cases, and we've got to determine structural error. If I had been you, I would have answered yes to Judge White's question instead of going into an analysis of all the law. If it's structural error, I assume it's your position that we don't go to see whether it's harmless or not harmless. And if it's an act that violates the rule, then structural error, that's the end of it. But I think we do have a problem in determining which we will have to do, what the law of the circuit is. For me, this court, en banc in 2008, seemingly announced a bright-line rule, and I think to the extent that Mosin's inconsistent with this prior en banc decision, then, of course, the en banc decision controls. Although, like I said, I do think this case is an easier case because I think even in sort of the bizarre test Mosin's left us with, we still win. All right, thank you, counsel. Thank you, Your Honors. The case that's argued will be.
judges: Reinhardt, Wardlaw, Whyte